Ronald Dockery v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-316-CR

     RONALD DOCKERY,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 1998-266-C
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      On October 15, 1999, Ronald Dockery pled guilty to sexual assault, without a punishment
recommendation from the prosecutor. The court sentenced him to fifteen years’ confinement in
the Texas Department of Criminal Justice-Institutional Division. He now argues that his guilty
plea was involuntary because he received ineffective assistance of counsel. Because Dockery has
not shown that counsel provided ineffective assistance, we will affirm the judgment.
      This is not our first acquaintance with Dockery’s case. After the initial sentencing hearing,
Dockery filed a motion for new trial, which was overruled by operation of law. He appealed the
court’s refusal to grant a hearing, and we remanded the cause to the trial court for a hearing. On
October 18, 2002, after hearing evidence on Dockery’s motion for new trial, which alleged the
same grounds for ineffective assistance of counsel argued here, the trial court denied the motion.
The Plea Hearing
      At the plea hearing, Dockery signed papers indicating that he understood the consequences
of his plea after consulting with his attorney and that he entered his plea knowingly and
voluntarily. See Dusenberry v. State, 915 S.W.2d 947, 949 (Tex App.—Houston [1st Dist.] 1996,
pet. ref’d). The plea papers show that Dockery’s attorney and the trial court verified that Dockery
entered his plea voluntarily and knowingly. Id. A defendant’s attestation of voluntariness at the
original plea hearing imposes a heavy burden on him at a later hearing to show a lack of
voluntariness. Id.; Ford v. State, 845 S.W.2d 315, 316 (Tex. App.—Houston [1st Dist.] 1992,
no pet.); Thornton v. State, 734 S.W.2d 112, 113 (Tex. App.—Houston [1st Dist.] 1987, pet.
ref’d).
Dockery’s Contention
      Dockery contends his plea was involuntary because he received ineffective assistance of
counsel. Particularly, he says that at the time he pled guilty: (1) he was not aware that he was
ineligible for “probation,” (2) he did not understand the difference between “probation” and
deferred adjudication, (3) he was not admonished that he fell under the sex offender registration
law,


 and (4) his attorney had failed to forward a two-year plea offer to him. Dockery testified at
the hearing on the motion for new trial that he was aware that he would be ineligible to receive
any type of probation if he elected jury sentencing and he chose to plead guilty to the court in
hopes of leniency. Counsel also testified.
INEFFECTIVE ASSISTANCE OF COUNSEL
      The standard for testing claims of ineffective assistance of counsel, which was set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in Hernandez v. State, 726
S.W.2d 53, 57 (Tex. Crim. App. 1986), applies to guilty pleas. Hill v. Lockhart, 474 U.S. 52,
58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Ex parte Pool, 738 S.W.2d 285, 286 (Tex. Crim.
App. 1987). The voluntariness of the plea depends on (1) whether his attorney’s advice was
within the range of competence demanded of attorneys in criminal cases, and if not, (2) whether
there is a reasonable probability that, but for his attorney’s errors, he would not have pleaded
guilty and would have insisted on going to trial. Hill, 474 U.S. at 58–59; Ex parte Moody, 991
S.W.2d 856, 857–58 (Tex. Crim. App. 1999). A reasonable probability is a probability sufficient
to undermine confidence in the outcome. Strickland, 466 U.S. at 694; Bone v. State, 77 S.W.3d
828, 833 (Tex. Crim. App. 2002).
      The assessment of whether a defendant received effective assistance of counsel must be made
according to the facts of each case. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). An allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Id. Failure to make the required showing
of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id.
      There is a strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Stated
another way: Counsel's competence is presumed and the party asserting ineffective assistance must
rebut this presumption by proving that his attorney's representation was unreasonable under
prevailing professional norms and that the challenged action was not sound trial strategy. Stafford
v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). The fact that another attorney might have
pursued a different course of action or tried the case differently will not support a finding of
ineffective assistance of counsel. Id. With these principles in mind, we now address Dockery’s
specific complaints.
Probation and Deferred Adjudication
      We begin by noting that Dockery makes much of his confusion between probation and
deferred adjudication. “Probation” in the context of Dockery’s complaint refers to community
supervision, which may be imposed by a judge or jury. Tex. Code Crim. Proc. Ann. art 42.12
(Vernon Supp. 2003). Under the Code of Criminal Procedure, judge-ordered community
supervision is not available for certain offenses, including sexual assault, the crime to which
Dockery pled guilty. Id. art. 42.12 § 3g.


 Although probation during deferred adjudication of
guilt differs in several respects from probation after conviction, the fact remains that it is a subset
of probation. Graves v. State, 803 S.W.2d 342, 344 (Tex. App.—Houston [14th Dist.] 1990, pet.
ref’d). Deferred adjudication may be imposed for sexual assault, provided that the judge finds 
deferred adjudication is in the best interest of the victim. Tex. Code Crim. Proc. Ann. art.
42.12 § 5(a) (Vernon Supp. 2003). Both community supervision (“regular probation”) and
deferred adjudication enable a defendant to remain in the “free world.”
      At the hearing on the motion for new trial, Dockery clearly established that it was his goal
to remain in the “free world.” He did not want to serve time in the penitentiary. His attorney,
John Hand, testified that he believed it might have been possible for Dockery to plead to a lesser-included offense that would qualify him for a sentence of “regular” community supervision, as
opposed to deferred adjudication. Hand also said that he explained to Dockery that Dockery’s
only chance to avoid doing time in the penitentiary was for the judge to impose his sentence.


 He
said that he discussed the differences between “regular probation and deferred adjudication” with
Dockery “many a time.” We believe that, in this instance, Hand’s advice fell within the range of
competence demanded of attorneys in criminal cases. Hill, 474 U.S. at 58-59; Ex parte Moody,
991 S.W.2d at 857–58.
The Two-Year Plea Offer
      Dockery also complains that his attorney turned down a two-year plea bargain offer without
first consulting him. At the hearing on the motion for new trial, affidavits from Beth Toben, the
assistant district attorney who handled Dockery’s case, John Hand, and Dockery were admitted. 
Toben’s affidavit, dated December 21, 1999, alluded to an informal plea bargain offer: “6. At one
point in the negotiations, I told John Hand that I would offer the Defendant two years to do. Mr.
Hand reported that Dockery refused to plead to two years confinement.” Hand’s affidavit recites
information regarding his contacts with the State.
2. . . . I never had an agreement with the State that they would reduce the charge to
lesser included offenses, however, I did not notice that he was pleading to an offense for
which the Court could not consider him for regular probation as well as deferred
adjudication.
3. Prior to the plea by Ronald Dockery, I discussed this case with Assistant District
Attorney Beth Toben, who told me that she would talk to Judge Allen, with my consent,
about accepting a negotiated plea for probation. Mrs. Toben wanted an Able assessment
prepared for Ronald Dockery at his expense to present the results to the judge. Beth
Toben advised me after she had discussed the matter with the Court that Judge Allen
would not accept a negotiated plea for probation in Mr. Dockery’s case. I advised Mr.
Dockery of this weeks before he opted to plead open to the court.
      Despite the contents of their affidavits, neither Dockery nor Toben could recall anything about
a plea bargain offer at the hearing on the motion for new trial, which occurred on October 18,
2002. Dockery stated, on cross-examination, that he never asked Hand to get him a “pen time
offer,” a plea bargain offer that would require Dockery to serve time in the penitentiary. Dockery
also said that he could not recall some of the facts recited in his affidavit.
PROSECUTOR: And just to clarify in this document, this declaration, you said that Mr. Hand
told you that I had offered or the State had offered two years, but that Mr. Hand
said he had turned it down because he told the State that you wanted probation. 
Is that correct?
 
DOCKERY:      I don’t have a recollection of that, ma’am.
 
PROSECUTOR:       But it says that in this declaration.
 
DOCKERY:      It says that in the declaration. Yes, ma’am.
 
PROSECUTOR:       Do you have any recollection that you told him that you wanted to take the
two years, to see if he could get you the two years?
 
DOCKERY:      No, ma’am. I don’t have any recollection of that, because I don’t have any
recollection of mine and his conversation about the offer.
      Toben testified that although Hand tried to persuade her to offer Dockery probation, she never
did. She said that she believed the information in her affidavit to be true, but that she had no
independent recollection of any plea bargain offer. “My vague recollection is that the day that we
were set to go to trial when he was trying to decide whether to plead guilty to the jury or to go to
the Court, you know, my position was still that I was going to recommend confinement. And I
remember talking with him about it over at my office. And then coming over here and being told
that he had made the decision to plead open to the Court. That’s really all I remember.”
      Moreover, Hand specifically testified that a two-year plea bargain “was never offered to me.” 
He explained:
I was always, “Mr. Dockery said he had to have probation. He couldn’t last in the pen if he
had to go to the penitentiary.” So Ms. Toben several times would say, how much time do
you think he would take. I said, “He won’t take any time, Beth. He has to have probation.” 
At one point in time, of course, I would go [b]ack to Ron and say what she said. And several
times he would say, how much time do you think she would give. And my recollection is that
I kept saying she would probably offer five.
      Hand testified that Dockery felt strongly about not serving time in the penitentiary, that the
victim appeared to testify on the day of trial, that the State had Dockery’s written confession, that
juries typically go hard on male-on-male statutory, sexual assaults, and that Dockery knowingly
elected to take the chance on leniency from the judge. In sum, Dockery’s open plea to the court
was trial strategy.
      Dockery’s affidavit was equivocal on the issue of a plea bargain. “4. I was never really
offered a plea bargain. The only statement my lawyer ever made to me about a plea bargain was
that, ‘the State offered you two years but I turned it down because I told her we wanted probation.’ 
When he told me that, I thought the two years was no longer an option for me to consider. I was
never advised to accept the two years. I was not advised to consider anything other than an open
plea to the court.”
      Dockery says his decision to plead open to the court was based on his conversations with
Hand; he says Hand never promised him probation. However, in his affidavit, Dockery says, “If
I had known that I was only eligible for deferred adjudication, I would not have entered a plea of
guilty without a plea bargain. I am aware that the judge can be harsh on sentencing, and I believe
that he never would have given me deferred adjudication on this offense. My belief is based on
statements I heard the judge make during a recess in court proceedings during one of my pretrial
settings, as well as things I had been told by other people. I overheard the judge tell someone that
he would send his own mother to jail if she broke the law. . . .”
      Given the contradictory evidence regarding a plea bargain, and Dockery’s clear desire to
remain in the “free world,”


 we do not find Dockery’s complaint “firmly founded in the record.” 
Thompson, 9 S.W.3d at 813. Dockery has not shown that Hand’s representation was
“unreasonable under prevailing professional norms” or that it was not “sound trial strategy.” 
Stafford, 813 S.W.2d at 506. Accordingly, we overrule Dockery’s sole issue.
CONCLUSION
      Having overruled Dockery’s only issue, we affirm the judgment.
 
                                                             BILL VANCE
                                                             Justice


Before Chief Justice Davis,
      Justice Vance, and 
      Justice Gray
      (Justice Gray concurs in result only, without separate opinion)
Affirmed
Opinion delivered and filed July 23, 2003
Do not publish
[CR25]